```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Carol A. Wilson, et al.,    :

        Plaintiffs,         :

    v.                      :   Case No. 2:15-cv-2702

Rodney D. Porter,
                            :   CHIEF JUDGE EDMUND A. SARGUS, JR.
                                Magistrate Judge Kemp
        Defendant.          :
```

### REPORT AND RECOMMENDATION

This lawsuit was brought by Carol A. Wilson in her capacity as the Administrator of various state pension funds and the trustees of those funds against Rodney D. Porter d/b/a Val's Crane Service. This matter is now before the Court on the plaintiffs' unopposed motion for summary judgment. (Doc. 16). For the following reasons, it will be recommended that the motion be granted.

### I. Background

The plaintiffs are the Administrator and Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Education and Safety Fund, and the Ohio Operating Engineers Apprenticeship Fund (the "Funds"). The Funds are jointly-administered, multi-employer fringe benefit programs established for the benefit of employees of contractors who perform work pursuant to an agreement with the International Union of Operating Engineers, Local Nos. 18, 18A and 18B (the "Union"). The Funds provide health and welfare, retirement, and other fringe benefits to their beneficiaries. Mr. Porter (d/b/a Val's Crane Service) employs workers in construction contracting. He entered into various collective bargaining agreements with the Union ("CBAs") which obligated him to make fringe benefit contributions to the Funds on behalf of his employees.

On September 12, 2013, Mr. Porter entered into two CBAs. The first was the Associated General Contractors of Ohio Building Agreement between the Union and the Labor Relations Division of the Associated General Contractors of Ohio ("ACG Agreement"). Doc. 1, Ex. A at 1.  The second was the Ohio Highway Heavy Agreement between the Labor Relations Division of the Ohio Contractors Association ("Highway Agreement").  Both the ACG and Highway Agreements ran from May 8, 2013 through April 30, 2017. Id. at 2.  On October 2, 2013, Mr. Porter entered into a third CBA, which was a short form agreement adopting the Construction Employers Association Building Agreement between the Construction Employers Association and the Union ("CEA Agreement"), dated May 1, 2012 through April 30, 2015. Id. at 3. Mr. Porter was obligated under these CBAs to make certain fringe benefit contributions to the Funds on behalf of his employees for all hours paid to covered employees. Id.

An audit conducted in January of 2015 revealed that Mr. Porter had failed to pay certain fringe benefit contributions owed under the CBAs. (Doc. 1, ¶¶8, 13, 18, and 23). The audit covered the time period of September 1, 2013 through January 1, 2015. Id.  The audit looked into whether, based on the hours of work performed by his employees, Mr. Porter had made the required contributions to the applicable Funds.  Based on the rates for the Funds, the audit determined that he owed $10,807.26 in delinquent contributions for the audit period, $5,566.90 of which is owed to the Health and Welfare Plan; $4,665.00 of which is owed to the Pension Fund; $520.93 of which is owed to the Apprenticeship Fund; and $54.43 of which is owed to the Education and Safety Fund. Id. at §§29; Doc. 16, Ex. A (Affidavit of Carol Wilson) at §6. The plaintiffs sued on August 11, 2015 pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1132(a)(3) & 1145 to recover these unpaid contributions. Id. at §1. Mr. Porter filed a timely answer (Doc. 7) and on April 19, 2016, his counsel moved to withdraw from the case. (Doc. 12). On

June 1, 2016, the plaintiffs filed this motion for summary judgment. After Mr. Porter failed to file a memorandum opposing his counsel's motion to withdraw, the Court granted that motion on June 14, 2016. (Doc. 19). There has been no appearance of counsel on Mr. Porter's behalf and no activity on the docket since the June 14, 2016 Order granting the motion to withdraw. Thus, the Court will proceed to consider the motion for summary judgment.

II. Legal Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). "[I]f the evidence is insufficient to reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted." Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 150 (6th Cir. 1995)(citation omitted). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of

course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.

      Mr. Porter has not opposed the motion for partial summary judgment.  Nonetheless, even where a party "offer[s] no timely response to [a] [ ] motion for summary judgment, the District Court [may] not use that as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c)."  Smith v. Hudson, 600 F.2d 60, 65 (6th Cir. 1979). This is so because "[a] party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." Id. at 64. However, the non-moving party cannot rest solely on the defenses in his pleadings, but must come forward with some evidence to show that there is at least a genuine issue of material fact. Celotex, 477 U.S. at 342.  Therefore, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists.  It is with these standards in mind that the instant motion will be decided.

### III. Discussion

Mr. Porter, by his own admission in his answer, entered into the CBAs at issue in this case, which contractually obligated him to make contributions to the Funds for all hours paid to his employees. He entered into the Highway Agreement and AGC Agreement on September 12, 2013 and the CEA Agreement on October 2, 2013. (Doc. 1, Ex. A at 1-3). The Highway Agreement states that "[Val's Crane Service] agrees to adopt and accept all the terms, wage rates and conditions of the 2013-2017 Ohio Highway Heavy Agreement." Id. at 2, ¶3. It also states that "[Val's Crane Service] further agrees to make contributions to the [Funds] as outlined in the Ohio Highway Heavy Agreement." Id. The acceptance of agreements for the AGC Agreement and the CEA Agreements have identical provisions. Id. at 1, ¶3; 3, ¶3. The CBAs each expressly require employers who are party to them to make contributions to the Funds based on all hours paid to covered employees. The Highway Agreement provides that "[f]ringe benefit contributions shall be paid at the following rates for all hours paid to each employee...." (Doc., 1, Ex. A at 2). Both the AGC and CEA Agreements contain identical provisions. Id. at 1, ¶3; 3, ¶3.

It is well settled that the language in the CBAs require signatories to make contributions based upon the hours worked by employees. See, e.g. Bunn Enterprises, Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs, 505 F.App'x 798 (6th Cir. 2015) (holding that the language of the CBAs "unambiguously requires employer signatories to contribute the appropriate benefits contributions for all hours worked by their employees, regardless of whether those hours are 'covered' under the contract.)"; cf. Board of Trustees of the Plumbers, Pipe Fitters & Mechanical Equipment Service, Local Union No. 392 Pension Fund v. B & B Mechanical Services, Inc., 813 F.3d 603 (6th Cir. 2015) (holding that even though it did not sign the CBA independently, employer was obligated to make contributions pursuant to the CBA by virtue

5

of his membership in a signatory Employer Association). There is no question of fact that as a signatory to the CBAs that Mr. Porter was bound by the unambiguous language in those agreements to make contributions to the Funds.

The Plaintiffs point out that in addition to his obligation under the CBAs, Mr. Porter is required by statute to make the fringe benefit contributions at issue in this case. 29 U.S.C. §1145 requires employers to make contribution to plans in accordance with the terms of the agreement.  Thus, when Mr. Porter became a signatory to the CBAs he was also under a statutory obligation to make contributions and to otherwise comply with the terms and conditions of the CBAs. See Wilson v. Bridge Overlay Systems, Inc., 129 F.Supp.3d 560, 568 (S.D. Ohio 2015), citing Orrand v. Scassa Asphalt, Inc.,794 F.3d 556, 562 (6th Cir. 2015).  The Wilson court also noted that "[t]hus far, this Circuit has only permitted the following defenses to a collection action: illegality of the contributions, the contract requiring the contribution was void at its inception, the union was decertified, and a limited contract termination defense." Id. at 569, citing Operating Engineers Local 324 Health Care Plan v. G & W Const. Co., 324 F.3d 1045, 1056 (6th Cir. 2015).

When an employer fails to pay the required fringe benefit contributions, fund trustees may recover the delinquent contributions, interest, liquidated damages, attorneys' fees and court costs as part of a judgment against the employer. Orrand, supra, at 560.  29 U.S.C. §1132(g) provides as follows:

> In any action under this title by a fiduciary or on behalf of a plan to enforce Section 515 in which a judgment in favor of the [Fund] is awarded, the court shall award the plan-
>
> (A)   the unpaid contributions,
>
> (B)   interest on the unpaid contributions,
>
> (C)   an amount equal to the greater of --
>
>       (i)   interest on the unpaid contributions, or

6

>    (ii) liquidated damages provided for under the
>         plan in an amount not in excess of 20 percent
>         (or such higher percentage as may be
>         permitted under Federal or State law)of the
>         amount determined by the court under
>         subparagraph (A),
>
> (D) reasonable attorneys' fees and costs of the
>     action, to be paid by the Defendant, and
>
> (E) such other legal or equitable relief as the court
>     deems appropriate.
>
> For purposes of this paragraph, interest on unpaid
> contributions shall be determined by using the rate
> provided under the plan, or, if none, the rate
> prescribed under Section 6621 of the Internal Revenue
> Code of 1986.

29 U.S.C. § 1132(g) (1990).

Plaintiffs assert that the Funds require all employers to pay late charges or liquidated damages for delinquent contributions at a rate of 18% per year. They state that the audit findings reveal that Mr. Porter owes delinquent contributions to the Funds in the amount of $10,807.26 for the audit period of September 1, 2013 through January 1, 2015; accumulated interest on that amount of $1,270.18 through August 15, 2015, plus late charges of $5.33 per day thereafter, an amount equal to the interest on the unpaid contributions pursuant to 29 U.S.C. §1132(g). (Doc. 67, Ex. A, at ¶6). As discussed above, Mr. Porter was obligated both contractually and statutorily to have contributed to the Funds. He has not provided any evidence to refute the delinquency findings from the audit. Thus, there is no genuine issue of material fact and the Plaintiffs are entitled to judgment as a matter of law.

### IV. Conclusion

For the foregoing reasons, it is recommended that the Plaintiffs' motion for summary judgment (Doc. 16) be granted and that the Court enter judgment in favor of Plaintiffs and against Mr. Porter for delinquent contributions to the Funds in the amount of $10,807.26; accumulated interest on that amount of

$1,270.18 through August 15, 2015, plus late charges of $5.33 per day thereafter.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge